Good morning, Your Honors. May it please the Court, Laura Merrigan here on behalf of the petitioner Jack Kellison. I intend to try to reserve two minutes on rebuttal. This case involves the legal definition of a compensable injury under the Longshore Act, which is a question that extends far beyond the individual Mr. Kellison. It extends to other Longshore Act claimants across the United States. It also extends to claimants under the many extensions to Longshore Act, including the Non-Appropriated Fund Instrumentality Act, which covers many civilians that are on United States bases. It covers workers under the Defense Base Act who are both foreign and American working abroad on United States bases and under U.S. contracts. And it extends to those who are working in remote locations on the Outer Continental Shelf via the Outer Continental Shelf Lands Act. The opening brief covered a lot of ground both legally and factually, and I understand given the limited time here that I'm going to need to reduce that. So the two main issues that I'm hoping to address, and of course would defer to any questions that Your Honors have about the others, are number one, if joint or disc degeneration is progressing at a faster pace and in a particular pattern because of employment duties, is that a work-related injury? And question two, are conditions like chronic obstructive pulmonary disease, diseases, or accidental injuries? As to the first point, Your Honors, when is a wear and tear injury compensable? This is a case in which both of the medical examiners concluded that the degenerative disc and degenerative joint conditions that Mr. Kellison suffered were wear and tear in nature. Both having reached that same conclusion, however, one stated that the condition, wear and tear, is a normal life issue and therefore not work-related. That was Mr. Greenfield for Dutra. The other doctor, Dr. Stark, testifying for Kellison, concluded that wear and tear is work-related because wear and tear inherently includes the wear and tear that occurs at the workplace. And so in a heavy labor occupation, such as Mr. Kellison's, there's going to be greater wear and tear, which ultimately leads to the disability. Now, interestingly, the testimony that Dr. Greenfield actually gave shows that his definition of what greater wear and tear, and particular wear and tear patterns, that one might have at their workplace. He gave an example, which I think to many longshore practitioners would be a perfect definition of cumulative trauma, which was that as he sat there giving the definition, cells were fretting on his temporomandibular joint from talking for such a long time during the deposition to the point that the next day his jaw would be sore. And that pattern and in his mind was just normal, even though it was linked to a particular activity, and interestingly to a work activity in his case, because the deposition was part of his job. But under Price, doesn't the claimant still have to show aggravation or acceleration, however minimal? And is your argument, well, just walking every day, that harms me, so therefore the employer is liable? No, Your Honor, not exactly. My argument is that if the employer requires a greater activity than one would be doing outside of employment, then that causes liability. So if the employer is saying you need to be walking around the yard all day and that's what's causing the aggravation, and I believe in Price one of the aggravating factors was walking, then yes, that should be part of the process. That's all part of the wear and tear process, which exceeds that which would be affecting, you know, me in an office job or someone not working on the waterfront. Such that the example going back to the temporomandibular joint example, which Dr. Greenfield had provided, it's not just that he was talking, it's that he was talking for hours during the deposition to the point that it would even hurt the next day. And that was considered normal. It seems to me in this case, they're going to get up and say, well, it's a substantial evidence standard, which is very deferential. Your client did not complain about these problems until after he retired, whereas when he had previous incidents at work injuries, he complained at the time. And that also there were credibility problems with your client, both in terms of answering in terms of testimony depositions, a criminal record, etc. I want to make sure the time you have that you can address those points. Yes, Your Honor. So as to the credibility points, we've conceded that on appeal. And that doesn't drive the question of whether the injury described by Dr. Greenfield, wherein a particular acceleration and pattern of fretting of cells, ultimately leading to a degenerative condition, would be work related or not. He has films, he has x-rays and MRIs from both before and from after the employment that show degeneration. He has, for example, the cervical disc degeneration was diagnosed six months after he left his work with Dutra with films that demonstrate it. So essentially what's being argued here is kind of a reverse eggshell plaintiff rule. And to toss in another metaphor, thinking about the camel. If during his 42 years of employment, employers keep putting pieces of straw on that camel's back, but only six months after his employment, does the camel reach back and put a piece of straw on his own back? And then it breaks. Is that not work related, even though the major stack of straw was put on during his employment? But in this case, your client previously would go to employers when he had problems. Now I understand those are different types of injuries. It'd be something slamming his hand or cutting off his finger. I mean, they're more, I'll call them acute injuries, than this is more of a long-term one. But again, under the substantial evidence standard, which is not a de novo review we're doing here, what is it, in terms of basically what compels us to say the IJ here got it wrong? What's your best point on that? The best point on that is that both doctors said it was a wear and tear injury. And with a wear and tear injury, it's little bit by bit, day by day, and not the type of thing that he would have gone to his employer about necessarily. He testified he was already taking ibuprofen. So we have this gentle increase. The frog in the water is what you're basically arguing. Sorry? Frog in the boiling water, to use a different animal analogy. Right, right. Okay, but if for us to go that way, would we have to say then that wear and tear is always compensable? No, your honor. There might be a doctor who defines wear and tear differently. But as the phrase wear and tear was defined here by both doctors, it has to do with the activities that are being engaged in. And both doctors acknowledge that wear and tear affects the pattern and the acceleration. So we have acceleration. We have the ultimate contribution to why he was suddenly so disabled, you know, several months after his injury. That didn't come from just walking for six months after his injury. Do you want to reserve your time? Yes, please, your honors. Good morning, your honors. Barry Ponticello on behalf of the Dutra Group and Seabright Insurance. Petitioner comes before you today and seeks nothing less than a re-weighing of the evidence and a re-litigating of the factual findings and the expert determinations, as well as a rewriting of the causation law. I think Judge Molloy was exactly correct. We need proof. There needs to be proof of an injury. The ALJ issued a meticulous, thorough, 92-page decision in which she articulated the basis for the findings, the basis for the weighing of the evidence. There was conflicting evidence as to both job duties and work environment. And what I hear from counsel today is, I'd like the court to re-weigh the work environment and the job duties. There's no proof of that. If I could interrupt. On the COPD, I'm troubled by that because the ALJ acknowledged that there was harmful fumes, but she said the predominant cause of his COPD was smoking. That's not the test. It has to be however modest, as long as it contributes to aggravation. So the ALJ doesn't have persuasive evidence, as far as I can tell, about the fumes not affecting chronic bronchitis. The nature of the disease almost suggests by its nature that fumes are going to aggravate it. Can I address that, Your Honor? I hope so. Thank you. I believe ALJ did address that. She addressed it in a number of manners. One is that she said that there was no acceleration or aggravation of the condition. She did not make a factual finding that the COPD was aggravated or worsened or affected in any way by the fumes. I don't believe that's in the evidence whatsoever or in the decision, Your Honor. What she said was there's no burden of proof, and if we look at it, and the BRB echoed this, that this man had episodes of COPD before he was at Dutra. While he was at Dutra, his condition was in fact better than it was previously, and in the six months after, it was also better again. And she saw no link, and she weighed the working conditions. And there were the two fact that you reference, the diesel fumes, come from machinery that are 15 feet above the level of the ground, so he would not have been exposed. Nonetheless, my reading of the record, as she said, it was possible he was exposed to harmful fumes. I would agree with you absolutely. And this case turns on that word almost exactly. Is it possible? And under the Longshore Act, and under Section 7 of the Administrative Act, the Administrative Procedures Act, and Greenwich Collieries, the true doubt rule was removed. We need to show proof, as Judge Molloy indicated. And because something is possible, doesn't mean there's proof of an injury. If that was the standard, we would be removing the proof. We would say that anyone who It's possible they had issues. It was evidence, counsel, from a plaintiff's expert, that there were conditions at the job site. She relied on the fact that one of the employee, Lindsay, testimony said, well, it was on the ocean, and it's a breezy. But she still, nonetheless, said, okay, it's possible he was exposed to harmful fumes, but the primary or predominant cause was smoking. That's what bothers me. I understand why that would bother you if that was her determination, and I think it gets back to possible. There's no way to defend if something is possible. It gets back to proof. It's not, counsel, there was a dispute about whether the conditions were. So let's talk about, if there was a dispute, that's for the fact finder to weigh, and as Judge Owens indicated, this is the substantial evidence standard. The judge issued a very well-reasoned, detailed opinion, which indicated that the only proof that Dr. Harrison had was the testimony of Mr. Kellesen. And she discounted that testimony as factual and as reliable. And outside of that, Dr. Harrison didn't take a history of his smoking, never visited the job site, didn't know the actual events of the employment. If we look at Dr. Harrison's testimony, he makes presumptions that there were conditions that could have caused it. And what Judge Gief indicated and what the BRB affirmed was, just because something could have happened doesn't mean that you met the proof standard. And that's what they're trying to do is conflate here. Claimant is attempting to conflate the causation standard with the price last responsible employer standard. And that conflation has been appropriately rejected. There still needs to be a causation of that condition. And because something might happen is not the level of proof for injury. And, Judge Fischer, if we were to go with that as the standard, how would there be a defense? What would the ALJ have to rely on? The ALJ would have an is-it-possible standard, which I think would be a near impossible standard for defending a claim and for making a finding of compensability. I think what Judge Gief indicated here was there was an absence of proof. And she said that Dr. Harrison had no basis for his opinions other than Mr. Kellison.  And to get to the COPD, I want to be clear that it's our position that it's not an occupational disease. It's not peculiar to pile driving. It's not peculiar to any particular occupation. And that the allegations here of smoke, fumes, and dust exist in the population as a whole. There's no evidence to support that. She didn't cite any. I would agree with you. There was no citation. She just makes that generalization. And I find it hard to believe that given the nature of the work here, that's not different from what's going on outside this courtroom. And if we are to assume that we are based upon a substantial evidence standard, what was presented were witnesses which were credited by the judge that the working conditions were on the water, there was air there blowing through, and that the fumes were at a level that were above his working conditions. Also, that claimant didn't come forward with any evidence themselves of air testing or other proof of an injurious exposure situation. So, Judge Fischer, I would agree that it is absolutely possible that COPD can be aggravated or accelerated. But on this record, we have someone who had no medical care, no symptoms during the period of employment, and then six months after, which there's no evidence that this is a latent condition. And, in fact, claimant stipulates in their opening brief that this is not a latent type of disease. So we would expect to see, and the evidence indicates, we would expect to see some level of symptoms, need for medical care, or disability either during the employment or after the employment. And the record is pretty clear that his condition is actually better. When we deposed Dr. Harrison, he said the COPD is better now than it was before he started at Dutra. And the trial decision points out quite accurately that claimant is in a situation of claiming that somehow he had an aggravation or acceleration when his condition is actually better today than it was before he started with Dutra. Does it matter that he was diagnosed with COPD before he went to work for Dutra? It's just one of the facts considered by the trier of fact. You can have an acceleration or an aggravation of a condition during employment. So the fact that he had it beforehand tells us that this condition exists, that he has it, but it doesn't tell us that during the brief ten or ten and a half months that he worked at Dutra, that it was accelerated or aggravated. There's no proof in this record that that happened. And I think the concern is could it have happened, and I believe it could have happened, but this case is about proof. And when counsel says that this case is about more than our situation, I think from a policy point of view, it would send an awful message that you don't need to have proof. As long as something could have been caused, we find it to be an injury. And I think the substantial evidence that Judge Owen's standard that we have here is what governs the factual findings, the evidentiary findings, and the expert findings that the judge made were well-reasoned, they were rational, and they were supported by the substantial evidence standard, and they adhere to the law requiring the Section 20 three-step proof of injury, which claimant seeks to conflate in their brief with the last responsible employer standard. So I would indicate that the evidence is overwhelming, that claimant has not met their burden, that the trial decision and the BRB is based on substantial evidence, adheres to law, and should be affirmed. Thank you, counsel. Thank you. We'll go ahead and give counsel three minutes to even out the score. Thank you, Your Honor. So COPD and considering whether or not it's a disease, we don't look at the COPD itself. We look at things like the diesel exhaust and whatnot like were on the construction site as referenced by Judge Fischer. For example, there's a tuberculosis case. Judge Learned Hand decided that because the tuberculosis was caused by exposure to grain husks or something like that, even though tuberculosis doesn't exist in a greater degree among grain handlers, it becomes an occupational disease because the stimuli existed in a greater degree. Here, between the creosote, welding fumes, heavy vehicle, exhaust lead paint, cement dust, other construction dust, and secondhand smoke present on the job site, Kellison does contend that it's an occupational disease. How does that argument differ from what counsel is arguing? That's possibility versus evidence in the record. Your Honor, so there is a difference in the test between an occupational disease and between an accidental injury. The language is different within the statute, and courts have interpreted it differently. For example, the Ninth Circuit in the Irani case, that's the Port of Portland v. Director, it's a 1991 case. Said, quote, Cordero, which is another case, does not require a demonstrated medical relationship between the employer covering the risk at the time of the most recent injurious exposure. So the focus is not on is there a cause. There's also the Lustig case out of the Ninth Circuit in which it could be proven that the latency of the cancer did not correlate to the final employer, but because the exposure went through that final employment, that final employer was liable. Now, much as there's a lot of pushback on applying this case law here because it's not a last responsible employer case, it is. He worked in multiple employments. He brought a claim against three of his employers. And to hold that he can't have these same standards because he chose to let out two employers via settlement would be contrary to public policy and logic. We'd be discouraging settlements. So that needs to be the same standard whether there's more than one employer or one or not. As to the issue of possibility of exposure, the standard is that the claimant raises the Section 20 presumption, which the ALJ held that he did, and then in an occupational disease case, as evidenced by the Ninth Circuit's Pissenich decision, that's the Todd Shipyards v. Director case, it falls to the employer to present substantial evidence that there was no potentially injurious exposure. And unless there's substantial evidence that there was no potentially injurious exposure, the employer has failed to carry their own burden of rebuttal, and automatically the claimant wins. And here, Mr. Kellison should win on that basis. Thank you, Your Honors. Thank you, Counsel. Thank you both for your argument in this case. This matter is submitted.
judges: Fisher, Owens, Molloy